23 C. C. P. A. (Customs)

**AKAWO & CO. et al. v. UNITED STATES.**

Customs Appeal No. 3882.

Court of Customs and Patent Appeals.
May 27, 1935.

Puckhafer & Rode, of New York City (George J. Puckhafer, of New York City of counsel), for appellants.

Joseph R. Jackson, Asst. Atty. Gen. (Ralph Folks, Sp. Atty., of New York City, of counsel), for the United States.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from a judgment of the United States Customs Court.

Merchandise, consisting of "so-called hit-and-miss rag rugs composed of cotton" produced in Japan, was assessed for duty by the collector at the port of New York at 35 per centum ad valorem under paragraph 1022 of section 1 of the Tariff Act of 1922 (19 USCA § 121, par. 1022), upon the basis of the American selling price as defined in section 402 (f) of that act (19 USCA § 239), in accordance with a proclamation of the President of the United States dated February 13, 1928 (53 Treas. Dec. 186), issued under the so-called flexible tariff provisions—section 315 (a), (b), and (c) of that act (19 USCA §§ 154–156), which read as follows:

"Sec. 315. (a) That in order to regulate the foreign commerce of the United States and to put into force and effect the policy of the Congress by this Act [chapter] intended, whenever the President upon investigation of the differences in costs of production of articles wholly or in part the growth or product of the United States and of like or similar articles wholly or in part the growth or product of competing foreign countries, shall find it thereby shown that the duties fixed in this Act [chapter] do not equalize the said differences in costs of production in the United States and the principal competing country he shall, by such investigation, ascertain said differences and determine and proclaim the changes in classifications or increases or decreases in any rate of duty provided in this Act [chapter] shown by said ascertained differences in such costs of production necessary to equalize the same. Thirty days after the date of such proclamation or proclamations such changes in classification shall take effect, and such increased or decreased duties shall be levied, collected, and paid on such articles when imported from any foreign country into the United States or into any of its possessions (except the Philippine Islands, the Virgin Islands, and the islands of Guam and Tutuila): Provided, That the total increase or decrease of such rates of duty, shall not exceed 50 per centum of the rates specified in Subtitle I of this Act [chapter], or in any amendatory Act.

"(b) That in order to regulate the foreign commerce of the United States and to put into force and effect the policy of the Congress by this Act [chapter] intended, whenever the President, upon investigation of the differences in costs of production of articles provided for in Subtitle I of this Act [chapter], wholly or in part the growth or product of the United States and of like or similar articles wholly or in part the growth or product of competing foreign countries, shall find it thereby shown that the duties prescribed in this Act [chapter] do not equalize said differences, and shall further find it thereby shown that the said differences in costs of production in the United States and the principal competing country can not be equalized by proceeding under the provisions of subdivision (a) of this section [154 of this title], he shall make such findings public, together with a de-

scription of the articles to which they apply, in such detail as may be necessary for the guidance of appraising officers. In such cases and upon the proclamation by the President becoming effective the ad valorem duty or duty based in whole or in part upon the value of the imported 'article in the country of exportation shall thereafter be based upon the American selling price, as defined in subdivision (f) of section 402 of this Act [section 239 of this title], of any similar competitive article manufactured or produced in the United States embraced within the class or kind of imported articles upon which the President has made a proclamation under [subdivision (b) of] this section.

"The ad valorem rate or rates of duty based upon such American selling price shall be the rate found, upon said investigation by the President, to be shown by the said differences in costs of production necessary to equalize such differences, but no such rate shall be decreased more than 50 per centum of the rate specified in Subtitle I of this Act [chapter] upon such articles, nor shall any such rate be increased. Such rate or rates of duty shall become effective fifteen days after the date of the said proclamation of the President, whereupon the duties so estimated and provided shall be levied, collected, and paid on such articles when imported from any foreign country into the United States or into any of its possessions (except the Philippine Islands, the Virgin Islands, and the islands of Guam and Tutuila). If there is any imported article within the class or kind of articles, upon which the President has made public a finding, for which there is no similar competitive article manufactured or produced in the United States, the value of such imported article shall be determined under the provisions of paragraphs (1), (2), and (3) of subdivision (a) of section 402 of this Act [paragraphs (1), (2), and (3) of section 234 of this title].

"(c) That in ascertaining the differences in costs of production, under the provisions of subdivisions (a) and (b) of this section [sections 154 and 155 of this title], the President, in so far as he finds it practicable, shall take into consideration (1) the differences in conditions in production, including wages, costs of material, and other items in costs of production of such or similar articles in the United States and in competing foreign countries; (2) the differences in the wholesale selling prices of domestic and foreign articles in the principal markets of the United States; (3) advantages granted to a foreign producer by a foreign government, or by a person, partnership, corporation, or association in a foreign country; and (4) any other advantages or disadvantages in competition.

"Investigations to assist the President in ascertaining differences in costs of production under this section shall be made by the United States Tariff Commission, and no proclamation shall be issued under this section until such investigation shall have been made. The commission shall give reasonable public notice of its hearings and shall give reasonable opportunity to parties interested to be present, to produce evidence, and to be heard. The commission is authorized to adopt such reasonable procedure, rules, and regulations as it may deem necessary.

"The President, proceeding as hereinbefore provided for in proclaiming rates of duty, shall, when he determines that it is shown that the differences in costs of production have changed or no longer exist which led to such proclamation, accordingly as so shown, modify or terminate the same. Nothing in this section shall be construed to authorize a transfer of an article from the dutiable list to the free list or from the free list to the dutiable list, nor a change in form of duty. Whenever it is provided in any paragraph of Subtitle I of this Act [chapter], that the duty or duties shall not exceed a specified ad valorem rate upon the articles provided for in such paragraph, no rate determined under the provision of this section [and sections 154, 155, 157 to 159 of this title], upon such articles shall exceed the maximum ad valorem rate so specified."

The importers protested, claiming that the proclamation of the President was without authority of law, illegal, and void, and that the merchandise should have been assessed at 35 per centum ad valorem under the provisions of paragraph 1022, section 1, supra, in accordance with its foreign or export value, "whichever is higher," as provided in section 402 (a), subsection (1), of the Tariff Act of 1922 (19 USCA § 234 (1).

The trial court overruled the protests, and appellants appealed to this court.

Paragraph 1022, supra, reads as follows: "Par. 1022. Common China, Japan, and India straw matting, and floor coverings made

therefrom, 3 cents per square yard; carpets, carpeting, mats, matting, and rugs, made wholly of cotton, flax, hemp, or jute, or a mixture thereof, 35 per centum ad valorem; all other floor coverings not specially provided for, 40 per centum ad valorem."

It appears from the report of the Tariff Commission, which, together with the presidential proclamation, was introduced in evidence as Exhibit No. 1, that the Commission made an investigation of the differences in the cost of production of rag rugs of the type here involved in the United States and the principal competing foreign country, Japan; that due public notice of such investigation was given in the manner required by law; that interested parties appeared at the hearings and presented briefs relative to the issues involved; and that "* * * the *cost of producing rag rugs* composed wholly or in chief value of cotton in Japan * * * [*was*] *not obtained from the accounting records of the producing companies, but invoice prices of imported rag rugs are used as evidence of the foreign costs, and are assumed to be not less than such costs.*

"During June and July, 1925, agents of the commission made an analysis of imports, including the prices of rag rugs composed wholly or in chief value of cotton imported into the port of New York during the first five months of 1925. Similar import prices and other data were obtained for the importations of one important importer through the port of San Francisco. Information regarding customs brokerage and drayage on imported rag rugs was obtained from all the importers of the product in New York City. *Wholesale selling prices of the imported rugs were also obtained from the same sources.*" (Italics ours.)

It further appears from the report of the Tariff Commission that rugs of the type here involved are produced in many homes, as well as in factories, in Japan, and, no doubt due to that fact, although it was not so stated in the report, the actual cost of production of such rugs in Japan was not obtained "from the accounting records of the producing companies."

It is contended by counsel for appellants that, as the Commission did not ascertain the actual cost of producing rugs of the character of those here involved in the principal competing country—Japan— "from the accounting records of the producing companies," but, on the contrary, accepted as evidence of such cost of production invoice prices, and also wholesale selling prices, of rugs of the character here involved imported into the United States from Japan, its investigation was illegal; that, as a legal investigation was a condition precedent to the issuance of a lawful proclamation by the President, the presidential proclamation was without authority of law, illegal, and void; that, as a consequence, the appraisement of the involved merchandise on the basis of the American selling price as defined in section 402 (f), supra, in accordance with such proclamation, was without authority of law, illegal, and void; and that therefore the assessment of duties by the collector at 35 per centum ad valorem upon the basis of the American selling price, in accordance with the final appraisement, was likewise without authority of law, illegal and void.

That a legal investigation by the Tariff Commission is a condition precedent to a lawful proclamation by the President, under the provisions of section 315 (a), (b), and (c), supra, has been repeatedly held by this court. Hampton, Jr. & Co. v. United States, 14 Ct. Cust. App. 350, T. D. 42030, affirmed in Hampton Jr. & Co. v. United States, 276 U. S. 394, 48 S. Ct. 348, 72 L. Ed. 624; Union Bridge Co. v. United States, 204 U. S. 364, 27 S. Ct. 367, 51 L. Ed. 523; William A. Foster & Co., Inc., et al. v. United States, 20 C. C. P. A. (Customs) 15, T. D. 45673; Norwegian Nitrogen Products Co. v. United States, 20 C. C. P. A. (Customs) 27, T. D. 45674; United States v. Fox River Butter Co., 20 C. C. P. A. (Customs) 38, T. D. 45675.

It is not contended in the case at bar that public notice of the investigation was not given by the Tariff Commission to interested parties, nor that such parties did not have an opportunity to be present, and to be heard, if they so desired. On the contrary, it appears from the report of the commission that interested parties appeared at the hearings and presented briefs relative to the subject-matter of the investigation.

It will be observed that subsection (c) of section 315, supra, provides that, in ascertaining the cost of production under the provisions of subsections (a) and (b) of that section, the President, "so far as he finds it practicable, shall take into consideration (1) the differences in conditions in production, including wages, costs of ma-

terial, and other items in costs of production of such or similar articles in the United States and in competing foreign countries; (2) the differences in the wholesale selling prices of domestic and foreign articles in the principal markets of the United States; (3) advantages granted to a foreign producer by a foreign government, or by a person, partnership, corporation, or association in a foreign country; and (4) any other advantages or disadvantages in competition," and that investigations to assist the President in ascertaining the differences in costs of production under section 315 (19 USCA §§ 154–159) shall be made by the Tariff Commission.

■■ We find nothing whatsoever in the report of the Tariff Commission to indicate that it did not make a full, fair, and impartial investigation, in order to aid the President in the performance of his duties under the provisions in question. The mere fact that the Commission did not obtain the cost of producing rugs of the character of those here involved "from the accounting records of the producing companies," in view of the fact that such rugs were produced in many Japanese homes, is not sufficient evidence upon which to base a holding that a legal investigation was not made by the Commission. The Commission having made a legal investigation, the President was not limited nor bound by the evidence submitted to it, as he is under subsection (c) of section 336 of the Tariff Act of 1930 (19 USCA § 1336 (c), see Feltex Corp. v. Dutchess Hat Works, 71 F.(2d) 322, 21 C. C. P. A. (Customs) 463, T. D. 46957; Carl Zeiss, Inc., v. United States, 76 F.(2d) 412, 23 C. C. P. A. (Customs) ——, T. D. 47654, but, on the contrary, might, if he saw fit to do so, secure information from any source deemed proper by him. The mere fact that the Tariff Commission may have committed error, although we find no evidence of it, so long as its investigation was a legal one, is not of vital consequence so far as the provisions of section 315, supra, are concerned. Hampton, Jr. & Co. v. United States, supra; William A. Foster & Co., Inc., et al. v. United States, supra; Norwegian Nitrogen Products Co. v. United States, supra; United States v. Fox River Butter Co., supra.

In the William A. Foster & Co. Case, supra, this court stated: "In determining this matter, it will be borne in mind that we are here concerned with the legality of the president's act in raising the rates on cast polished plate glass, unsilvered, from the statutory figure to that fixed by his proclamation. The question is not whether the United States Tariff Commission committed error, or whether the testimony heard by, or the findings of, the commission were sufficient to legally justify the president's finding and proclaimed rates. The President is not bound by such testimony or findings. He may arrive at his conclusions from information derived from other sources, which information may be privately conveyed and confidentially received. The various elements which he must take into consideration, as fixed by said section 315 (c), give him wide latitude. Therefore it is fallacious to argue that possible error committed by the Tariff Commission, or failure of proof before that body, may invalidate the President's finding and proclamation. Such hearing before the United States Tariff Commission is provided by law 'to assist the President,' not to control him."

The quoted excerpt has particular application to the issues in the case at bar.

■ It appears from the record that the President complied with the mandates of section 315, supra. Accordingly, his findings of fact are final and conclusive, and may not be reviewed by the courts. United States v. S. Leon & Co., 20 C. C. P. A. (Customs) 49, T. D. 45677, and cases cited therein.

We are of opinion that the United States Customs Court reached the right conclusion, and its judgment is affirmed.

Affirmed.